UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>**MAXWELL JENSEN,**<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CRIMINAL NO. 25-CR-4750-MIS |

**UNITED STATES SUPPLEMENTAL BRIEFING IN OPPOSITION TO DEFENDANT JENSEN'S MOTION TO SUPPRESS**

Defendant Jensen filed his motion to suppress evidence on December 24, 2025. Doc. 76. The United States filed its response on January 7, 2026. Doc. 82. The Court held a hearing on the motion on February 18, 2026. At the end of the hearing, the Court ordered supplemental briefing from both parties. Doc. 109. The United States reiterates all arguments set forth in its original response. [1]

## I. Background on SOI's employment

At the February 18 hearing, the Court sought details about how several pieces of evidence were acquired by law enforcement agents during the investigation. Specifically, the Court sought clarification on (A) the exact nature of the SOI's employment with Defendant Jensen; (B) why the SOI took pictures of load tickets; (C) how the SOI learned of the address for the Carlsbad yard (4154 7 Rivers Highway, Carlsbad, New Mexico), which is at the heart of the conspiracy charged in this case; (D) why the SOI took pictures of trucks in the Midland/Odessa

---

[1] A more complete background of the charged conspiracy is found in the United States' Brief in Support of Defendant's Detention. Doc. 44.

yard; (E) how the SOI obtained Defendant Jensen's bank account information; and (F) was the SOI present for all of the recorded conversations between him and Defendant Jensen. After the hearing, undersigned counsel met directly with both state and federal agents working on the case, as well as the Source of Information (SOI). During these meetings, the United States learned the information detailed below directly from these witnesses. In general terms, the SOI was clear in that everything he passed along to law enforcement agents, he received directly from Defendant Jensen.

*A. Nature of the SOI's employment for Defendant Jensen*

The SOI answered a job listing on Indeed.com. The SOI spoke directly to and was hired by Defendant Jensen. Defendant Jensen hired him to close and clean out a yard in the area of Midland/Odessa, Texas. Thus, he was given access to the whole of the Midland/Odessa facility. Additionally, he would be present when loads of crude oil were removed from the facility. He would be responsible for obtaining the load tickets related to these transfers.

*B. The load tickets*

The SOI was hired to clean out the Midland/Odessa yard and sell items, including crude oil that was presently at the facility. During that employment, Defendant Jensen instructed the SOI to take photographs of the load tickets from the oil delivered to and/or sold from the facility. Defendant Jensen instructed the SOI to send those photographs to Defendant Jensen as proof of sale. The SOI also sent these photographs to law enforcement agents.

*C. The address for the 7 Rivers Highway yard*

The focus of the conspiracy charged in the above-captioned matter is the crude oil facility on 7 Rivers Highway, Carlsbad, New Mexico. The SOI was clear that he first learned of this address directly from Defendant Jensen. Defendant Jensen directed the SOI, as an employee, to have dirt delivered to this yard for the constructed berms around frack tanks. Part of this




communication about unloading dirt was captured in text messages between the SOI and Defendant Jensen. The SOI did not learn of this address from the paperwork at the Midland/Odessa yard. The SOI stated that he received this address from Defendant Jensen before his first in-person meeting with the FBI agent; thus, before he was officially signed up as a confidential source.

*D. The photographs of trucks*

The SOI explained that he took photographs of the trucks and their license plates while working for Defendant Jensen in case it would help law enforcement. While these photographs were not part of his employment for Defendant Jensen, he was on the property at Defendant Jensen's direction. As fully argued below, the United States does not believe there is a lawful reason for suppressing these photographs. However, these photographs are relevant to the Midland/Odessa yard, and thus, the United States has no intention of using them in its case-in-chief. These photographs did not lead to any information relevant to the 7 Rivers Highway yard which is the focus of the charges in the District of New Mexico.

*E. Bank account information*

Defendant Jensen gave the SOI bank account information that the SOI then sent to law enforcement. Defendant Jensen gave this information to the SOI as the SOI was employed to

sell oil and equipment for Defendant Jensen. The SOI did not independently discover this information within the paperwork of the Midland/Odessa yard. During oral arguments, the United States mistakenly believed that the bank account information was used to further the overall investigation. That was inaccurate. Law enforcement did subpoena bank account information for Defendant Jensen, but it was not the bank account received by the SOI. The bank account information the SOI received from Defendant Jensen was for a bank account in the Bahamas. The United States subpoenaed bank accounts in the United States. These subpoenas were based upon information obtained independently from the bank account information obtained from the SOI. The bank account information received by the SOI was only used in the United States's detention argument, specifically in its flight risk analysis.

*F. Recorded conversations*

The SOI consensually recorded numerous phone calls between himself and Defendant Jensen. He then shared these recordings with law enforcement. During oral arguments, the defense indicated that they believed, but were not sure if, the SOI was present for all the recorded phone calls. Specifically, they mentioned that they believe the SOI's wife and not the SOI recorded a call on July 29, 2025. The SOI explained that he was present during all the recorded phone calls, including the conversation on July 29, 2025. Additionally, the SOI and DPS Agent Brown both separately explained that the United States did not direct the SOI to ask any specific questions during these recorded phone calls.

## Argument

The United States reiterates all arguments set forth in its original response. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants

shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. "A search occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jackson*, 466 U.S. 109, 113 (1984).

*A. Much of the information used to charge Defendant Jensen was received directly from Defendant Jensen during the SOI's employment; and then consensually shared with law enforcement.*

As explained in the United States's original response, the Fourth Amendment has not been implicated in this case. The recorded conversations, be they calls or text messages, the 7 Rivers Highway address, and the Bahamans bank account were all received directly from Defendant Jensen and consensually recorded by the SOI. Even if the Court finds that the SOI was a United States agent, it still does not amount to a search because the SOI has made it clear he consensually recorded his conversations. *United States v. McKneely*, 69 F.3d 1067, 1074 (10th Cir. 1995)("[W]hen the government records a defendant's conversation with another party, pursuant to that party's consent, neither the Fourth Amendment nor 18 U.S.C. 2511(2)(c) is violated."). *See, e.g., Smith v. Maryland*, 442 U.S. 735, 743-44 (1979) ("This Court consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties"); *Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1145-46 (10th Cir. 2014) (discussing invited-informer doctrine).

The SOI was employed to close the crude oil facility in Midland/Odessa. Thus, he had access to the whole facility. However, even with this unfettered access, the SOI did not find the 7 Rivers Highway address or the Bahamas bank account on any documents during his employment at the Midland/Odessa yard. Therefore, the Fourth Amendment was not violated when the SOI turned this information over to law enforcement. *See, supra McKneely*, *Davis*, and *Brokers' Choice of America, Inc.*

As soon as Defendant Jensen hired the SOI, he asked the SOI to break a lock to enter the Midland/Odessa yard. This, obviously, seemed strange to the SOI, so he researched Defendant Jensen and discovered that he was actively being prosecuted for oil thefts in Texas. With this information the SOI contacted law enforcement and communicated his concerns and willingness to cooperate. Law enforcement did not give him directions to collect any specific evidence and did not immediately sign him up as an informant. The SOI started sending law enforcement information as described above. This included the address of the 7 Rivers Highway facility. Thus, the SOI was not signed up as an informant when he provided the address to law enforcement.

The SOI was hired to clean the Midland/Odessa yard and to sell items, which included crude oil that was at the facility. During that employment, Defendant Jensen instructed the SOI to take photographs of the load tickets from the oil sold from the facility. Defendant Jensen instructed him to send those photographs to Defendant Jensen as proof of sale. The SOI also sent these photos to the agents. This action does not implicate any search by the United States. The SOI was in possession of the photographs and voluntarily communicated them to law enforcement.

While the photographs of the vehicles taken by the SOI were not done at the direction of Defendant Jensen, neither were they done at the direction of the United States. The SOI was operating in his capacity as an employee of Defendant Jensen and thus on the facility property lawfully. He independently decided to take photographs of vehicles that may, or may not, have been involved in criminal activity. He then voluntarily turned those photographs over to law enforcement.

*B. The doctrine of fruit of the poisonous tree does not require suppression of independently obtained information.*

Even if the court decides that there was a search, and that the search was unlawful, the fruit of the poisonous tree would not require the suppression of any relevant evidence regarding the 7 Rivers Highway yard. First, suppression requires the challenger to have standing to object to the illegal search. *United States v. Olivares-Rangel*, 458 F.3d 1104 (10th Cir. 2006). Defendant Jensen, through his counsel, has repeatedly told the Court that he is not connected to the 7 Rivers Highway facility outside of his ownership of two frack tanks located at the facility. Doc. 65 ("Defendant's Response to United State' Brief in support of Detention"), p. 3. He argues that he hired the SOI to work at his yard(s) in the Midland/Odessa area, and he is not an owner or operator of Hound Dog Energy which operated the 7 Rivers Highway facility in the District of New Mexico. Doc. 65, pp. 1-3. Thus, by Defendant Jensen's own argument, he has no standing to object to any investigation or seizures at occurred at the 7 Rivers Highway facility. *United States v. Daily*, 921 F.2d 994, 1002-03 (10th Cir. 1990) (no standing found where neither defendant was an officer, employee, or shareholder of a money brokerage firm and defendants had attempted to distance themselves from the firm so that they had insufficient privacy interests to object to allegedly illegal search), *overruled on other grounds*. The Daily case exactly parallels Defendant Jensen's predicament. Both prior to his arrest and after his arrest Defendant Jensen has done everything he can to distance himself from Hound Dog Energy and the 7 Rivers Highway facility. By his own actions, Defendant Jensen undermines his standing to object to any searches that occurred there.

The Tenth Circuit has recognized an owner, and an employee can have a reasonable expectation of privacy in business property. *United States v. Leary*, 846 F.2d 592, 595 (10th. Cir. 1988). However, unlike a private residence the individual must establish factors that support

that his subjective expectation of privacy was objectively reasonable. In *Leary*, the Tenth Circuit found that an individual defendant, who was a vice-president of a company, had standing to challenge the seizure from the offices of business records. The *Leary* court stated as follows.

> Whether a person has standing to contest a search on fourth amendment grounds turns on whether the person had a legitimate expectation of privacy in the area searched, not merely in the items seized. Determining whether a legitimate or justifiable expectation of privacy exists, in turn, involves two inquiries. First, the claimant must show a subjective expectation of privacy in the area searched, and second, that expectation must be one that society is prepared to recognize as reasonable. The ultimate question is whether one's claim to privacy from government intrusion is reasonable in light of all the surrounding circumstances.

*Id.* at 595, quotations and citations omitted. This somewhat limited approach was readdressed in *United States v. Anderson, 154 F.3d 1225, 1230 (10th Cir. 1998)* ("better approach is to examine all of the circumstances of the working environment and the relevant search"). In *Anderson*, the Tenth Circuit elaborated on the extent to which an employee has standing to challenge the search of an area in his workplace which is not his personal office space. *Anderson*, 154 F.3d 1225, 1230. Anderson states that ownership does not confer automatic standing but is a factor. *Id.* at 1231. Other factors which are material per *Anderson* and the authorities which *Anderson* parenthetically describes include: lawful possession or lawful control of the property or of the place searched; whether the items are personal or work-related items; the defendant's interest in or relationship to the evidence seized; whether the evidence is within the defendant's immediate control; whether the defendant was present at the time of the search; whether the location was locked or otherwise secured; and the extent to which the defendant maintained control of the items. *Id*. at 1230-33. Using the expanded approach demanded by Anderson, Defendant Jensen's numerous efforts to conceal and oviscape his connection to Hound Dog Energy and the 7 Rivers Highway facility renders his claim to standing untenable. Defendant Jensen lacks standing to object to any seizures from the 7 Rivers Highway facility.

While the United States used the 7 Rivers Highway address to start its investigation, the investigation involved substantial in-person surveillance of the yard by the agents. They developed independent facts from their personal observations. Through this surveillance, agents personally observed vacuum trucks leaving the yard, connecting to a pipeline, and returning to the yard. This is consistent with oil thefts seen in the area. Agents then applied for and received a warrant to install a tracking device. Exhibit 1. The only information in the search warrant that comes from the recorded calls is that the yard received approximately 600 barrels of oil a day. *Id.* ¶ 7. Based on this, even if the court finds that the recorded calls constitute an illegal search, the warrant will still have probable cause given the agents personal observations.

The bank account information was not used by the United States in its investigation. Thus, any taint from the acquisition of this information does not affect the rest of the investigation. The United States' sole use this information was in its argument for detention. Even then it did not rely solely on the bank account to argue for detention. Most of the United States' argument was focused on the danger posed to the community if Defendant Jensen was released. The flight risk comes more from Defendant Jensen's family having a residence and finances in the Bahamas.

## Conclusion

The Tenth Circuit has held that consensual recordings do not violate the Fourth Amendment. The SOI consensually recorded conversations with Defendant, and all information learned was information Defendant either sent to the SOI or from Defendant instructing the SOI to send him photographs of mail and tickets, and therefore there was no violation of the Fourth Amendment. Defendant has never argued otherwise. Defendant Jensen's has not standing to object to any search at the 7 Rivers Highway facility, because of his own efforts to conceal and

oviscape his connection to Hound Dog Energy. The United States asks the Court to Deny Defendant's Motion to Suppress.

Respectfully submitted,

TODD BLANCHE
Deputy Attorney General
RYAN ELLISON
Acting United States Attorney

***Electronically Filed 3/23/26***
ALYSON R. HEHR
Assistant United States Attorney
200 N. Church Street
Las Cruces, NM 88001
(575) 323-5241

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification to defense counsel of record on this date.

***Electronically Filed 3/23/26***
ALYSON R. HEHR
Assistant U.S. Attorney